UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AMY BIONDOLILLO,

                                    Plaintiff,

                                                        Case # 17-CV-6576-FPG

v.

                                                        DECISION AND ORDER

LIVINGSTON CORRECTIONAL FACILITY, *et al.*

                                    Defendants.

## INTRODUCTION

Plaintiff Amy Biondolillo alleges against Defendants Livingston Correctional Facility ("LCF"), Tamara Kennedy, and the New York State Department of Corrections and Community Supervision ("DOCCS") several violations of federal and state law, including: (1) gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f) *et seq.*, as amended, 42 U.S.C. § 1983, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*; (2) pregnancy discrimination under Title VII, 42 U.S.C. §§ 2000e(k) *et seq.*, as amended, and the NYSHRL; (3) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and the NYSHRL; (4) pregnancy related disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, as amended, and the NYSHRL; (5) "other forms of discrimination" under 42 U.S.C. § 1983; (6) wrongful termination under Title VII, the ADA, the ADEA, and the NYSHRL; (7) common law intentional infliction of emotional distress; and (8) common law negligent hiring, retention, and supervision.  ECF No. 1.  Plaintiff seeks declaratory and injunctive relief; front pay; compensatory, nominal, and punitive damages; and attorneys' fees and costs.  *Id.*

1

Under Federal Rule of Civil Procedure 56, Defendants filed a Motion for Summary Judgment on May 6, 2022.  ECF No. 54.  On June 3, 2022, Plaintiff responded.  ECF No. 57.  On July 1, 2022, Defendants replied.  For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

From June 2016 until December 30, 2016, Plaintiff worked as a registered nurse at Livingston Correctional Facility ("LCF"), a DOCCS facility, where nursing administrator Tamara Kennedy was her supervisor.  ECF No. 1.  Plaintiff was 42 years old when her employment at LCF ended.  *Id.*  Plaintiff was staffed at LCF through a nursing agency, White Glove Placement, Inc. ("White Glove").  *Id.*[1]  Agency nurses at LCF, like Plaintiff, were supervised and managed by Kennedy.  ECF No. 57-1 at 4.  While Plaintiff worked at LCF, the nursing staff was comprised of 13 other women—11 of whom were age 40 or older—and two men.  *Id.*  Plaintiff's contract with LCF, through White Glove, was set to expire on December 31, 2016.  *Id.*  Plaintiff was paid hourly by White Glove for her shifts at LCF.  *Id.*  In the approximately six months Plaintiff spent at LCF, Plaintiff's performance appraisals reflected that she demonstrated good clinical skills, but she recorded seven absences and was counseled by Kennedy for performance issues, which included reading the palms of incarcerated individuals and staff, discussing personal information with incarcerated individuals, and, on at least one occasion, providing treatment to a patient without a doctor's orders.  ECF No. 57-1 at 8.  Full-time DOCCS employees, as compared to agency nurses, are permitted a total of eight absences per year.  *Id.*

At some point during December 2016, Plaintiff learned that she had become pregnant.  *Id.*  Plaintiff claims she informed Kennedy of her pregnancy sometime that month before her

---

[1] The parties do not dispute that Defendants DOCCS and LCF meet the definition of an "employer" for the purposes of this action, though Plaintiff was also employed by White Glove.

employment ended on December 30, but Kennedy claims she did not.  ECF No. 57-1 at 8.   On December 22, 2016, Plaintiff emailed Kennedy to tender her resignation because she had accepted another job with a different nursing agency, stating: "I want to thank you for giving me the opportunity of working here.  I have learned a lot of new things from the staff.  I will be taking a new position and a new contract starting 01/02/17. I know this places a huge inconvenience on you and the staff, I will be able to help out when I can and fill in some of the holes as my new contract is straight days 6-2. I do apologize that it was short notice however I found out this morning. When I get my new schedule I will be happy to go over it with you and help out here when I can." *Id*.; *see also* ECF No. 54-10 at 1.

On December 29, 2016, Plaintiff was scheduled to begin a shift at 2:00 p.m., but had a doctor's appointment scheduled at 1:00 p.m.  *Id*. at 5.  Because her appointment did not begin on time, Plaintiff notified Kennedy that she would be late to her shift and Kennedy indicated that her shift would be considered a "call off," an absence that required Kennedy to mandate a DOCCS nurse to work a double shift if coverage for the shift was not volunteered.  *Id*.  Plaintiff arrived at work at 3:30 p.m.  *Id*.  Plaintiff was scheduled to work the next day, December 30, 2016, but does not recall what hours.  *Id*.

On the morning of December 30, 2016, Plaintiff woke with abdominal pain and vaginal bleeding.  *Id*.  Plaintiff called her doctor and was advised to visit the emergency room.  *Id*.  Plaintiff notified the nurses' station at LCF that she may be unable to report to her shift for that reason.  *Id*.  Plaintiff informed DOCCS nurse Cheryl Burrows that she would be visiting the emergency room due to problems with her pregnancy.  *Id*.  Burrows indicated that she would inform Kennedy.  *Id*.  Shortly thereafter, Kennedy called Plaintiff.

Plaintiff alleges that when Kennedy called her, she asked, "What is your problem now?" *Id*. at 5-6.  Plaintiff alleges she informed Kennedy that she was experiencing bleeding as a result of her pregnancy, that she would need to visit the emergency room, and that she would attempt to come in late for part of her shift.  *Id*. at 6.  Critically, Plaintiff alleges that Kennedy said "I'm sorry that you're spotting [bleeding] but if you don't come to work, you don't have a job, you know what, this is ridiculous at your age, forget it, you don't have a job[,]" then hung up.  *Id*.  Kennedy denies making such statements.  ECF No. 53-3 at 4.  Plaintiff claims she interpreted Kennedy's alleged statements as a termination.  ECF No. 57-1 at 6-7.  Plaintiff did not report to work for the shift and her timesheets for that week show she was not paid that day.  *Id*.; *see* ECF No. 54-13 at 26.  In addition, Plaintiff alleges that, in September 2016 of that year, she discussed the possibility of becoming a per diem nurse with LCF/DOCCS and intended to become one through her new staffing agency after her departure from White Glove, but allegedly interpreted Kennedy's above statements as a denial of the prospect of such a position.  ECF No. 57-1 at 6-7.  Plaintiff did not formally apply for such a position after her employment with White Glove ended, nor did Plaintiff apply at any time during her employment with White Glove.  *Id*.

In addition to the allegations related directly to her own claims, Plaintiff brings general allegations that LCF treated female employees differently than male employees, held male employees to less stringent standards, and that Kennedy was "very aggressive toward [Plaintiff] and numerous other female employees." *Id*. at ¶¶ 25, 26.

On August 17, 2017, Plaintiff commenced this action asserting eleven causes of action against Defendants.[2]  ECF No. 1.

---

[2] Plaintiff commenced this lawsuit as a putative class action, *see* ECF No. 1, but did not move for class certification in accordance with the Court's Letter Order dated February 6, 2020, *see* ECF No. 23 (extending deadline for Plaintiff to file a motion for class certification).  Because no motion was filed, the Court construes Plaintiff's claims to be asserted individually.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment" if the moving party "shows that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 323), "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law" are "material." *Id.* at 248. A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Angulo v. Nassau Cnty.*, 89 F. Supp. 3d 541, 548 (E.D.N.Y. 2015) (quoting another source). "Only when reasonable minds could not differ as to the import of evidence is summary

judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. *Anderson*, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading....").

## DISCUSSION

For the reasons set forth below, Defendants' motion for summary judgment is granted in part and denied in part. Plaintiff's Title VII pregnancy discrimination claim may proceed. Plaintiff's Title VII gender discrimination claim, ADEA claims, ADA claims, § 1983 claims, NYSHRL claims, and New York common law claims are dismissed.

### I.      Title VII

Defendants argue that Plaintiff's Title VII pregnancy discrimination and gender discrimination claims should be dismissed because Plaintiff suffered no "adverse action" and, even if she did, such action did not take place under circumstances giving rise to an inference of discrimination.[3] Plaintiff argues that (a) her alleged termination and (b) subsequent denial of a per

---

[3] Defendants argue that the Title VII claims asserted against Kennedy must be dismissed because Title VII claims cannot be maintained against individual defendants. *See Carmody v. Vill. of Rockville Ctr.*, 661 F.Supp.2d 299, 326

diem position with LCF each constitute adverse action under Title VII and the circumstances at the time of such action give rise to an inference of discrimination.  For the reasons explained below, Plaintiff's Title VII pregnancy discrimination claim may proceed and Plaintiff's gender discrimination claim is dismissed.

Title VII prohibits an employer from failing to hire or discharging "any individual, or otherwise to discriminate against any individual […] because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  Under the *McDonnell Douglas* framework, a plaintiff establishes a *prima facie* case of Title VII discrimination by showing that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination."  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010).  The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *See Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).

Even if a plaintiff succeeds in presenting a *prima facie* case, a defendant may rebut that showing by articulating a legitimate, non-discriminatory reason for the employment action.  *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Upon a defendant's articulation of a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the *prima facie* case dissipates.  *See St. Mary's*, 509 U.S. at 510-11; *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1336 (2d Cir. 1997).  For a plaintiff's claims to progress, the plaintiff must then present evidence that the defendant's proffered, non-discriminatory reason is "a mere pretext for actual discrimination."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  The plaintiff must "produce not simply some evidence, but

---

(E.D.N.Y. 2009).  Plaintiff concedes in response "that she cannot maintain her Title VII claims against Kennedy."  ECF No. 57 at 13.  Accordingly, those claims are dismissed.

sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (internal quotation marks omitted).  In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination.  To reach a jury, "[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." *St. Mary's*, 509 U.S. at 519.

The parties do not dispute that Plaintiff was a member of a protected class as a pregnant woman, nor that Plaintiff was qualified for the position she held.  Defendants primarily maintain that Plaintiff did not suffer an adverse action and, even if an adverse action occurred, such action did not take place under circumstances giving rise to an inference of discrimination.

An adverse employment action is an action that gives rise to "a materially adverse change in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted).  "To be 'materially adverse,' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id*. (internal quotation marks omitted).  A materially adverse change is "a termination of employment, a demotion evidenced by a decrease in wage or salary [...] a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id*. (internal quotation marks omitted).  "The key . . . is that the plaintiff must show that the [employment action] created a materially significant disadvantage." *Id*. at 641 (internal quotation marks omitted).  A plaintiff's "subjective feelings" concerning an employment action cannot establish that the action was materially adverse. *Islamic Soc'y of Fire Dep't Pers. v. City of New York*, 205 F.Supp.2d 75, 87 (E.D.N.Y. 2002).

Here, it is undisputed that on Thursday, December 22, 2016, Plaintiff emailed Kennedy her resignation, stating, among other things, "I will be taking a new position and a new contract starting 01/02/17." ECF No. 57-1 at 4. Plaintiff's timesheets with her previous agency, White Glove, show that her last shift and date of pay was Saturday, December 24, 2016. *See* ECF No. 54-13 at 26. On the morning Friday, December 30, 2016, the last day Plaintiff was scheduled to work, Plaintiff notified Kennedy that she would be late for her shift, scheduled to begin at an unknown time, because of complications with her pregnancy, and Kennedy allegedly responded that "I'm sorry that you're spotting [bleeding] but if you don't come to work, you don't have a job, you know what, this is ridiculous at your age, forget it, you don't have a job[.]" *Id*. at 5. Plaintiff did not report for her shift on December 30, 2016.

Defendants claim that Kennedy did not make the above statements and, thus, did not terminate Plaintiff. Defendants claim that after Plaintiff's last scheduled day of work at LCF, her contract was allowed to expire the next day, December 31, 2016. In the alternative, Defendants claim that even if Kennedy terminated Plaintiff, a termination after a resignation has been tendered does not constitute adverse action.

Because Defendants contest whether Kennedy, Plaintiff's supervisor, made the above statements terminating Plaintiff's employment, there is a genuine dispute of material fact as to whether an adverse action was taken with respect to Plaintiff's alleged termination. Contrary to Defendant's argument, it is well-settled that a "termination of employment" constitutes an adverse action for Title VII purposes. *Galabya*, 202 F.3d at 640. A termination may still constitute an adverse action even if the employee's resignation is otherwise imminent. *See Rodriguez v. Wet Ink, LLC*, No. 08-CV-857, 2012 WL 1079006, at *8 (D. Colo. Mar. 30, 2012) (immediate termination of employee who tendered two-week notice constituted adverse action, insofar as it

"effectively depriv[ed] [the plaintiff] of two weeks' wages"); *Forrest v. Jewish Guild for the Blind*, 786 N.Y.2d 382, 392 (N.Y. 2004) (where plaintiff sent letter of resignation to employer, but employer terminated plaintiff prior to receipt of letter, concluding that question of fact existed as to whether "the [employer's] action preempted and rendered ineffective her resignation"). Therefore, the Court concludes that the alleged termination is sufficiently adverse under Title VII. While Plaintiff's damages for such a termination may be minimal, a termination under these circumstances is sufficiently adverse.

In addition, Plaintiff claims that she suffered an adverse action because she was denied a per diem position as a result of discrimination. Plaintiff claims she "fully intended to continue working at [LCF] as a per diem employee nurse" through a different nursing agency. ECF No. 57 at 13. Plaintiff claims she discussed this with Kennedy and received "encouragement" to do so in September 2016, before her resignation from White Glove and alleged termination. *Id*. Defendants claim that no offer or approval was ever given for Plaintiff to work a per diem position and observe that Plaintiff did not ever formally apply for such a position, before or after Plaintiff's termination. For the reasons below, the Court concludes that Plaintiff presents insufficient evidence to support her claim that she suffered an adverse action because she was denied a per diem position as a result of discrimination.

Here, Plaintiff offers evidence that she may have discussed the possibility of per diem position with Kennedy in September 2016, *see* ECF No. 57-1 at 2, but no evidence that a position was ever offered or that Defendants began the process of hiring her as a per diem nurse through her new nursing agency at any time before Plaintiff's conversation with Kennedy on December 30, 2016. Even if such a position were discussed, Plaintiff offers no evidence that Defendants ever intended to hire her in such a capacity, nor does Plaintiff present evidence suggesting she harbored

any kind of expectation of such a position, beyond her own apologetic statements in her resignation email that despite the inconvenience her resignation may cause she would be "*able* to help out when I can and fill in some of the holes" and that she would "be happy […] to help out [at LCF]." ECF No. 54-10 at 1 (emphasis added).  Of note, Kennedy did not respond to this email and Plaintiff provides no evidence that Kennedy or any other individual at LCF/DOCCS intended to rehire her as a per diem nurse after she left White Glove.  *See* ECF No. 54-3.  Because Plaintiff presents no evidence that she applied for a per diem position, or that such a position was offered, the Court concludes that Plaintiff cannot establish that she suffered an adverse action with respect to Defendants' alleged denial of such a position.  *See Moran v. Bd. of Educ. of City of Bridgeport*, No. 3:10-CV-00393-WWE, 2013 WL 1294584, at *4 (D. Conn. Mar. 28, 2013) (holding that plaintiff presented sufficient evidence of adverse action where plaintiff formally requested position and such employment explicitly denied).

This remains the case despite Plaintiff's argument that the alleged discrimination she suffered at the hands of Kennedy dissuaded her from applying to such a position and rendered a formal application "futile." *Baker v. Nat'l R.R. Passenger Corp.*, No. 94 Civ. 0856 (JFK), 1997 WL 53237, at *7 (S.D.N.Y. Feb. 7, 1997) (explaining that a nonapplicant can be a victim of Title VII discrimination when an application would have been a "useless act" serving only to "confirm a discriminatee's knowledge that the job [she] wanted was unavailable to [her]").  Plaintiff's reliance on this "futility doctrine" is misplaced.

First, in this Circuit, the doctrine's availability is confined to the "failure to promote" context under Title VII; that is, in limited circumstances in which an employed plaintiff is denied or passed over for a promotion because of a "consistently enforced" discriminatory policy. *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1017 (2d Cir. 1980) (quoting *International Bhd. of*

*Teamsters v. United States*, 431 U.S. 324, 367 (1977)), *cert. denied*, 452 U.S. 940 (1981); *accord Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993).  No such circumstances are alleged here.  Second, even if they were, Plaintiff's alleged discussion regarding the per diem position took place in September 2016, approximately three months before her conversation with Kennedy in which she was allegedly terminated.  Plaintiff, therefore, had over three months to apply for a per diem position with LCF, but did not do so.  No discriminatory action is alleged to have occurred during this period, such that Plaintiff may have been deterred from submitting an application.  Plaintiff's inaction during this period undercuts any claim that a denial of a per diem position was the result of a "discriminatory policy[,]" the existence of which Plaintiff fails to sufficiently allege.  *Bethlehem Steel Corp.*, 635 F.2d at 1017.

In sum, because Plaintiff offers no evidence that she applied for a per diem position with LCF/DOCCS or such a position was denied, the Court cannot conclude that plaintiff suffered "a materially adverse change in the terms and conditions of employment" with respect to this aspect of her claims.  *Galabya*, 202 F.3d at 640 (internal quotation marks omitted).  Plaintiff, at most, indicates that she may have hoped to obtain a per diem position with LCF/DOCCS, but Plaintiff's "subjective feelings" concerning an employment action cannot, alone, establish that the action was materially adverse.  *Islamic Soc'y*, 205 F.Supp.2d at 87.

To continue with her claims, Plaintiff must next show that the alleged adverse action suffered—her termination—occurred under circumstances giving rise to an inference of discrimination.  *Ruiz*, 609 F.3d at 491-92.  For the reasons below, the Court concludes that Plaintiff's pregnancy discrimination claim may proceed to the next step of the Court's Title VII analysis, but Plaintiff's gender discrimination claim must fail.

With respect to her pregnancy discrimination claim, while proof of the elements of a *prima facie* case may vary according to the facts and context of the individual situation, "[c]ommon circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated colleagues outside the relevant class." *McCormick v. Allegheny Valley School*, No. 06-3332, 2008 WL 355617, at *9 (E.D. Pa. Feb. 6, 2008) (citation omitted).  Derogatory or negative remarks can also satisfy the fourth prong of a *prima facie* case under the circumstances.  *See Rossi v. Wyoming Valley Health Care System*, No. 09-0179, 2010 WL 2766343, at *4 (M.D. Pa. July 13, 2010) (holding that the plaintiff had demonstrated a *prima face* case of discrimination by pointing to derogatory remarks).

Plaintiff contends that Kennedy's alleged comments on December 30, 2016—"I'm sorry that you're spotting [bleeding] but if you don't come to work, you don't have a job, you know what, this is ridiculous at your age, forget it, you don't have a job[.]"—give rise to an inference of discrimination.  ECF No. 54-10 at 6.  Due to the facial severity of the alleged comments and their explicit discussion of Plaintiff's complications with her pregnancy, the Court agrees that the alleged comments sufficiently give rise to an inference of pregnancy discrimination for the purposes of Plaintiff's *prima facie* case.

The Court, however, fails to discern how such comments give rise to a separate, discrete gender discrimination claim. "Courts analyze [pregnancy discrimination claims] as [gender] discrimination under Title VII." *Brown v. Aria Health*, No. 17-1827, 2019 WL 1745653, at *5 (E.D. Pa. Apr. 17, 2019).  Plaintiff appears to distinguish her gender discrimination claim from her pregnancy discrimination claim primarily on the basis of Kennedy's comments coupled with other alleged discriminatory conduct at LCF.  Plaintiff observes that during her time at LCF, the nursing

staff was comprised of 13 other women—11 of whom were age 40 or older in 2016—and two men.  Plaintiff alleges, in vague and conclusory fashion, that LCF treated female employees differently than male employees, held male employees to less stringent standards, and that Kennedy was "very aggressive toward [Plaintiff] and numerous other female employees." ECF No. 1 at ¶¶ 25, 26.  Plaintiff offers no specific evidence of such treatment, beyond her bare, generalized assertions of such conduct.  Plaintiff offers no "male comparators" who were treated more favorably by LCF in general, or by Kennedy, in particular.  *Lynch v. Nat'l Fuel Gas Distribution Corp.*, 25 F. Supp. 3d 358, 366 (W.D.N.Y. 2014).  Without more, the Court finds that a distinct gender discrimination claim cannot be sustained, as presented.  Kennedy's comments, alone, while suggestive of potential discrimination on the basis of pregnancy, include no remarks giving rise to an inference that Kennedy was separately motivated by gender.  Plaintiff fails to demonstrate that her gender, apart from her pregnancy, was a motivating or determinative factor in her alleged termination.  For these reasons, Plaintiff's Title VII gender discrimination claim must fail.

With Plaintiff's *prima facie* pregnancy discrimination claim sufficiently established, the Court now addresses whether Defendants have proffered, as they must, a "legitimate, non-discriminatory reason" for the employment action.  *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Upon a defendant's articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the *prima facie* case dissipates.  *See St. Mary's*, 509 U.S. at 510-11; *Fisher*, 114 F.3d at 1336. For a plaintiff's claims to progress, a plaintiff must then present evidence that the defendant's proffered, non-discriminatory reason is "a mere pretext for actual discrimination."  *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000).

Defendants claim that, even if Plaintiff was terminated, Plaintiff was terminated because she was "unreliable."  ECF No. 54-4 at 12.  Defendants argue that Kennedy's alleged comments were, at most, an expression of frustration and Plaintiff was terminated because she was "absent from work seven times in the six months she worked at LCF[,]" had been counseled by Kennedy for performance issues, and, when Plaintiff was absent, Kennedy was "often required to mandate a DOCCS nurse to work a double shift to cover for Plaintiff."  *Id.*  These circumstances, which are not contested apart from Defendants' claimed reliance upon them as a basis for Plaintiff's termination, provide Defendants with a legitimate, non-discriminatory justification for terminating Plaintiff.  Because Defendants proffer a non-discriminatory, neutral reason for Plaintiff's alleged termination, Plaintiff must now show it is a "pretext for actual discrimination."  *Weinstock*, 224 F.3d at 42.

Plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by [Defendants] were false, and that more likely than not [discrimination] was the real reason for the [employment action]."  *Van Zant*, 80 F.3d at 714 (internal quotation marks omitted).  In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination.  "Pretext may be demonstrated either by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' or by reliance on the evidence comprising the prima facie case, *without more*."  *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994) (emphasis added), quoting *Burdine*, 450 U.S. at 256, 101; *see St. Mary's Honor Center*, 509 U.S. at 510-12; *see also Visco v. Cmty. Health Plan*, 957 F. Supp. 381, 388 (N.D.N.Y. 1997). The Court concludes, at this juncture, that Plaintiff meets this burden.

Here, while there is scarce evidence to suggest that Defendants' proffered justifications were pretextual, the primary evidence Plaintiff adduces to comprise her *prima facie* case— Kennedy's alleged statements—is sufficient to rebut Defendants' proffered justifications.  While "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," *Burdine*, 450 U.S. at 253, Plaintiff has presented evidence that would permit a rational factfinder to infer that Defendants' proffered rationale is pretextual, rendering summary judgment inappropriate. *See Smith v. American Express Co.*, 853 F.2d 151, 154–55 (2d Cir. 1988).

In this case, Plaintiff presents sufficient evidence to rebut Defendants' rationale and suggest that her alleged termination was motivated by discriminatory animus.  The demeaning and specific nature of Kennedy's alleged remarks with respect to Plaintiff's claimed complications with her pregnancy suffice to create a genuine dispute of material fact as to Defendants' rationale. Because Plaintiff may rely solely on evidence comprising her *prima facie* case to rebut such a rationale, Plaintiff need not show, as Defendants contend, that her position was filled by a non-pregnant female or male, nor that peers with similar attendance or performance records were retained, nor that others were accommodated under similar circumstances.  *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 65 (2d Cir. 1995); *see also Visco*, 957 F. Supp. at 388.

In short, Plaintiff adequately presents a *prima facie* case of pregnancy discrimination under Title VII and meets her burden of rebutting Defendants' non-discriminatory rationale for her alleged termination.  To be clear, Plaintiff does not need a "smoking gun" to prove invidious intent, and the Court emphasizes few plaintiffs will have one.  *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010).  Because Plaintiff has proffered arguably direct evidence as to

whether Defendants' non-discriminatory rationale was pretextual, the Court concludes that Plaintiff's Title VII pregnancy discrimination claim may proceed. *Quaratino*, 71 F.3d at 65.

For the foregoing reasons, this aspect of Defendants' motion for summary judgment is granted in part and denied in part. Plaintiff's Title VII pregnancy discrimination claim may proceed and her Title VII gender discrimination claim is dismissed.

## II.   Age Discrimination in Employment Act

Plaintiff alleges that Defendants unlawfully discriminated against her because of her age. ECF No. 57 at 17. Defendants again contend that Plaintiff did not suffer an adverse action and, even if she did, Defendants' actions were not motivated by discriminatory animus. ECF No. 54-4 at 13. For the reasons below, the Court concludes that Plaintiff's claims must be dismissed.

The ADEA bars an employer from discharging an employee because of age. 29 U.S.C. § 623(a) (1976); *Stanojev v. Ebasco Services, Inc*., 643 F.2d 914, 919, 921–22 (2d Cir. 1981). ADEA claims are, like Title VII discrimination claims, reviewed under the *McDonnell Douglas Corp. v. Green* framework. 411 U.S. 792 (1973); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000). To show discriminatory treatment, a "plaintiff must [first] establish a *prima facie* case of discrimination." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000). In the ADEA context, a plaintiff must show "(i) membership in the protected group (40 to 70 years of age); (ii) she was sufficiently qualified to continue holding her position; (iii) that she experienced adverse employment action, and (iv) that the action occurred under circumstances giving rise to an inference of discrimination." *Bucalo v. Shelter Island Union Free Sch. Dist*., 691 F.3d 119, 129 (2d Cir. 2012).

After a plaintiff establishes a *prima facie* case and must rebut a defendant's purportedly neutral rationale, to prevail on an ADEA age discrimination claim, it is not sufficient for a plaintiff

to show "that age was simply a motivating factor" in the employer's adverse action.  *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174 (2009).  Instead, "the ADEA's requirement that an employer took adverse action 'because of' age [requires] that age was the 'reason' that the employer decided to act."  *Id.* at 176.  Thus, to establish age discrimination under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  *Id.*; *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302-03 (2d Cir. 2021).  If Plaintiff establishes a *prima facie* case, the parties must engage with the *McDonnell Douglas Corp. v. Green* burden-shifting framework, *id.*, as articulated in Section I, *supra*.

The parties do not dispute Plaintiff's membership in the protected group, as a 42-year-old woman, nor that she was qualified to continue holding her position.  The dispute centers on the remaining two elements.  Because a court's ADEA analysis resembles Title VII analysis with respect to the "adverse action" element, the Court concludes that Plaintiff may have suffered an adverse action when she was allegedly terminated by Defendants, but not when she was allegedly denied a per diem position, for the reasons stated in Section I, *supra*.  The third element is accordingly satisfied.  The Court now addresses the fourth element.

To state a claim that her termination occurred "because of [her] age," 29 U.S.C. § 623(a)(1), Plaintiff must allege "that age was the 'reason' that [Defendants] decided to act," *Gross*, 557 U.S. at 176.  Stray age-related remarks are insufficient to raise an inference of discriminatory motive unless they "(1) [were] made repeatedly, (2) drew a direct link between [discriminatory] stereotypes and the adverse employment decision, and (3) were made by supervisors who played a substantial role in the decision to terminate."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) (quoting *Naumovski v. Norris*, 934 F.3d 200, 216 n.47 (2d Cir. 2019).

Kennedy's alleged comments on December 30, 2016—"if you don't come to work, you don't have a job, you know what, this is ridiculous *at your age*, forget it, you don't have a job[.]"— may give rise to an inference of age-related discrimination.  ECF No. 54-10 at 6 (emphasis added).  The alleged comments are explicitly-age related, appear to draw a direct link between an age-related stereotype and the alleged employment decision, and were made by a supervisor, Kennedy, who, as alleged, possessed termination authority with respect to Plaintiff.  *See Lively*, 6 F.4th at 306.  While the comments do not appear to have been "made repeatedly" and the decision to terminate is contested by Defendants, the Court finds that the alleged comments may give rise to an inference of age discrimination for the purposes of a *prima facie* case.

Still, Plaintiff must demonstrate more than that age may have been "simply *a* motivating factor" in the employer's adverse action.  *Gross v. FBL Fin. Servs*., 557 U.S. 167, 174 (2009) (emphasis added).  "[P]laintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  *Lively*, 6 F.4th at 302-03.  One stray remark "without more" ordinarily does not constitute "sufficient evidence to make out a case of employment discrimination."  *Danzer v. Norden Sys., Inc*., 151 F.3d 50, 56 (2d Cir. 1998).  To establish "but-for" causation, Plaintiff must allege evidence concerning "other indicia of discrimination" that would make Kennedy's remarks "bear a more ominous significance."  *Lenzi v. Systemax, Inc*., 944 F.3d 97, 112 (2d Cir. 2019) (internal quotation marks omitted).  To that end, courts will consider "when the remark was made in relation to the employment decision at issue[,]" the "content of the remark[,]" and "the context in which the remark was made."  *Henry v. Wyeth Pharm., Inc*. 616 F.3d 134, 149 (2d Cir. 2010).  No single factor is dispositive.  *Id*. at 150.

Plaintiff's claim appears to hinge entirely upon Kennedy's alleged remark. While Kennedy's remark undoubtedly bore a close proximity to Plaintiff's alleged termination, the

remark appears to have been made within the context of Plaintiff informing Kennedy that she would again not timely arrive to work, one day after she had done the same and arrived late. Defendants, as before, contend that Kennedy's remark was an expression of frustration and Plaintiff's alleged termination was the result of, not Plaintiff's age, but Plaintiff's frequent absences and the resulting impositions of mandated double shifts upon DOCCS nurses.  Guided by the "content of [Kennedy's] remark"—*i.e.* its specific reference to Plaintiff's age—the Court finds that Plaintiff has presented adequate evidence that her age may have been *a* factor in Defendants' alleged decision to terminate Plaintiff.  Absent other evidence, however, Plaintiff cannot show that it was *the* 'reason' that [Defendants] decided to act."  *Gross*, 557 U.S. at 176.

Courts require more for such a finding in the ADEA context.  As an example, Plaintiff offers no evidence suggesting that younger, similarly situated employees that had engaged in similar behavior were treated more favorably.  *See Williams v. PMA Companies, Inc*., 564 F. Supp. 3d 32, 50 (N.D.N.Y. 2021) (finding ADEA plaintiff may demonstrate inference of age discrimination where younger, similarly situated employees were treated more favorably); *Ehrbar v. Forest Hills Hosp*., 131 F. Supp. 3d 5, 21 (E.D.N.Y. 2015) (same).  The required showing is that the employer treated the plaintiff "less favorably than a similarly situated employee outside of the protected group." *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (internal quotation marks omitted). A plaintiff may make that showing "in a variety of ways."  *Chertkova v. Connecticut Gen. Life Ins. Co*., 92 F.3d 81, 91 (2d Cir. 1996).  For example, "[g]enerally, a plaintiff's replacement by a significantly younger person is evidence of age discrimination."  *Carlton v. Mystic Transp., Inc*., 202 F.3d 129, 135 (2d Cir. 2000).  No such circumstances are alleged here.

In addition, Plaintiff does not offer evidence of any other actions by decisionmakers at LCF that could be viewed as reflecting discriminatory animus, absent Kennedy's single remark.  *See*

*Ostrowski v. Atlantic Mut. Ins. Cos*., 968 F.2d 171, 182 (2d Cir.1992).  Absent other evidence suggestive of discriminatory conduct, the Court concludes that no reasonable factfinder could find that age was the "but-for" cause of Plaintiff's alleged termination on the basis of Kennedy's remark, alone.  Plaintiff's claim, therefore, must be dismissed.

For these reasons, this aspect of Defendants' motion for summary judgment is granted and Plaintiff's ADEA claim is dismissed.

### III.    Americans with Disabilities Act

Plaintiff argues that Defendants discriminated against her because of her pregnancy-related complications in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*.  ECF No. 57 at 10.  Defendants repeat their contentions that Plaintiff did not suffer an adverse action and separately assert that pregnancy is not an ADA-protected disability.  ECF No. 54-4 at 18.  In response, Plaintiff maintains that pregnancy-related complications are protected under the ADA.  For the reasons below, the Court concludes that Plaintiff's ADA claim must be dismissed.

To establish a claim under the ADA, a plaintiff must show (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA; (3) the plaintiff could perform the essential functions of his job with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability.  *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998). In the ADA,

> (2) Disability. The term "disability" means, with respect to an individual—
> > (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> > (B) a record of such an impairment; or
> > (C) being regarded as having such an impairment.

42 U.S.C. § 12102 (2008), P.L. 110–325, Sec. 4(a) (Sept. 25, 2008); *DeMarco v. CooperVision, Inc.*, No. 06-CV-6187-CJS, 2009 WL 656337, at *7 (W.D.N.Y. Mar. 11, 2009), *aff'd*, 369 F. App'x 254 (2d Cir. 2010).

Pregnancy is typically not a disability within the meaning of the ADA, *Johnson v. A.P. Prods. Ltd.*, 934 F.Supp. 625, 626 (S.D.N.Y.1996); *Lacoparra v. Pregament Home Centers, Inc.*, 982 F.Supp. 213, 227 (S.D.N.Y.1997); *Cvern v. Ent. Solutions Providers, Inc.*, No. 00–cv–8704, 2001 WL 533723, * 4 (S.D.N.Y. May 18, 2001), but Plaintiff's claim centers on severe "medical complications resulting from that pregnancy [,]" not the pregnancy itself. *Bateman v. Project Hosp., Inc.*, No. 07-CV-2085 RRM/RML, 2009 WL 3232856, at *10 (E.D.N.Y. Sept. 30, 2009). Courts have found that pregnancy complications can create physical impairments sufficient to substantially limit one or more major life activities (in this case, Plaintiff's ability to engage in her employment), thus satisfying the ADA's statutory definition of "disability." *See* 42 U.S.C. § 12102(2); *Garrett v. Chicago Reform Board of Trustees*, No. 95 C 7341, 1996 WL 411319, at *1–2 (N.D. Ill. July 19, 1996).

The Supreme Court set out a three-step approach for determining whether a plaintiff meets the definition of a "disability" based on a physical or mental impairment. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). First, the Court must determine whether a plaintiff suffers from a qualifying physical or mental impairment. *Bragdon*, 524 U.S. at 631. Second, the Court must identify the activity that the plaintiff claims is impaired, and then determine whether that activity constitutes a "major life activity." *Id*. Third, the Court must determine whether the plaintiff's impairment "substantially limited" the identified major life activity. *Id*.

Plaintiff's ADA claim fails at the first step. Plaintiff must present evidentiary proof to show she suffers from a "a physical or mental impairment that substantially limits one or more

major life activities [,]" to proceed with her claim.  42 U.S.C. § 12102(2)(A); *see Hernandez v. City of Hartford*, 959 F.Supp. 125 (D. Ct. 1997) (evaluating evidentiary proof from physician to determine such impairment); *see also Gage v. United States*, No. 1:05-CV-2902, 2008 WL 974044, *11 (N.D. Ohio Apr. 7, 2008) ("The record is wholly devoid of any medical evidence. Plaintiff has failed to present an affidavit and fails to cite to relevant deposition testimony that would satisfy her prima facie requirements. There is no testimony or competent medical evidence cited by Plaintiff that describes the seriousness of her injuries that would permit this court find her injuries are substantially limiting a major life activity.")

While Plaintiff asserts that she suffered "severe pregnancy complications – abdominal pain, vaginal bleeding, and hospitalization [,]" she provides no evidentiary proof, inadmissible or admissible, to provide a basis from which the Court may reach the conclusions Plaintiff argues in her opposition memorandum.  ECF No. 57 at 21.  No medical records are provided, only Plaintiff's assertions.  Without further evidentiary support, the Court must find Plaintiff's ADA claim insufficient as a matter of law.

For these reasons, this aspect of Defendants' motion for summary judgment is granted and Plaintiff's ADA claim is dismissed.

## IV.  42 U.S.C. § 1983 Equal Protection

Defendants argue that Plaintiff's 42 U.S.C. § 1983 claims must be dismissed because Plaintiff cannot establish that she was treated differently from similarly situated males.  ECF No. 54-4 at 15-17.  In response, Plaintiff contests Defendants' conclusion, but concedes that her § 1983 claims should be dismissed on other grounds.  ECF No. 57 at 11.  Plaintiff correctly states that New York State agencies or departments and New York State employees, such as Defendants here, are immune to suit under § 1983.  *See, e.g., Cannon v. NYS Comm'r of Soc. Servs.*, No. 19 Civ.

6493 (CM), 2019 WL 3743975, at *4 (S.D.N.Y. Aug. 7, 2019) ("Any § 1983 claims Plaintiff seeks to assert against the State of New York or a particular New York State agency are barred by the Eleventh Amendment and are dismissed."). The Court accordingly grants this aspect of Defendants' motion for summary judgment. Plaintiff's § 1983 claims are dismissed.

V.    NYSHRL

Defendants argue that Plaintiff's three NYSHRL claims for gender discrimination, pregnancy and disability discrimination, and age discrimination must be dismissed because damages actions against a state or state official in federal court are barred by the Eleventh Amendment absent a waiver of sovereign immunity by the state. ECF No. 54-4 at 9. Plaintiff maintains that the state has waived sovereign immunity such that her claims should survive dismissal. ECF No. 57 at 11. For the reasons below, the Court agrees with Defendants and dismisses Plaintiff's NYSHRL claims.

The Eleventh Amendment "bars suits that seek either money damages, or injunctive relief" against state agencies or officers acting on behalf of the state. *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001) (internal citations omitted). Here, the parties agree Defendants DOCCS and LCF are state agencies and that Defendant Kennedy acted on behalf of the state. As a result, Plaintiff's claims may proceed only if Plaintiff demonstrates a waiver of sovereign immunity protection. *See Winokur v. Office of Court Admin.*, 190 F.Supp.2d 444, 448 (E.D.N.Y. 2002).

Contrary to Plaintiff's argument, "New York has not waived its Eleventh Amendment immunity for NY[S]HRL suits in federal courts." *Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014), *aff'd*, 748 F.3d 471 (2d Cir. 2014). "[T]he district courts in this Circuit have repeatedly held that the New York Human Rights Law does not include a waiver of the State's sovereign immunity to suit in federal court." *Smith v. State Univ. of New York*, No.

00-CV-1454, 2003 WL 1937208, at *7 (N.D.N.Y. 2003). Indeed, "nothing in the text of the [NYS]HRL constitutes a waiver of immunity or consent to be sued." *Tuckett v. N.Y. State Dep't of Tax. & Fin*., No. 99-CV-0679, 2000 WL 1028662, at *2 (S.D.N.Y. 2000). "For this Court to have the power to adjudicate the [NYSHRL claims] in the complaint, […] an express waiver by the State […] must exist." *Winokur*, 190 F.Supp.2d at 451.

Here, Plaintiff cannot show Defendants waived sovereign immunity. *Id*. at 450. Plaintiff merely asserts, without authority, that New York has waived sovereign immunity. Because Plaintiff fails to show an "express waiver" of such immunity, Plaintiff's NYSHRL claims are barred by the Eleventh Amendment and must be dismissed as a matter of law. *Winokur*, 190 F.Supp.2d at 451. For these reasons, Defendants' motion for summary judgment is granted with respect to Plaintiff's NYSHRL claims.

## VI. Common Law

Plaintiff alleges three New York common law claims against Defendants, including wrongful termination, intentional infliction of emotional distress, and, with respect to LCF and DOCCS, negligent hiring, retention, and supervision. *See* ECF No. 1. Defendants assert that, as with Plaintiff's NYSHRL claims, these claims cannot be maintained against a state agency or its employee and must be dismissed. ECF No. 54-4 at 9. In response, Plaintiff concedes that dismissal of the claims is appropriate. ECF No. 57 at 11. The Court accordingly grants this aspect of Defendants' motion for summary judgment and dismisses Plaintiff's remaining three common law claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  Plaintiff's Title VII pregnancy discrimination claim may proceed. Plaintiff's remaining claims are dismissed.

IT IS SO ORDERED.

Dated: February 16, 2023
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York